# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:                                            Case No. 6:13-bk-00938-CCJ
                                                  Chapter 7
TIMOTHY GARY
TOWANDA D GARY,

            Debtors.

_____/

## FLAGSTAR BANK, FSB'S
## MOTION FOR RELIEF FROM AUTOMATIC STAY

---

**NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider this motion without further notice or hearing unless a party in interest files an objection within 21 days from the date of service of this paper. If you object to the relief requested in this paper, you must file your Objection with the Clerk of the Court at 400 W. Washington Street, Suite 5100, Orlando, FL 32801 and serve a copy on the movant's attorney, Alice Blanco at Aldridge | Connors LLP, Fifteen Piedmont Center, 3575 Piedmont Road, N.E., Suite 500, Atlanta, GA 30305.**

**If you file and serve an objection within the time permitted, the Court may schedule a hearing and you will be notified. If you do not file an objection within the time permitted, the Court will consider that you do not oppose the granting of the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

      **COMES NOW,** Flagstar Bank, FSB ("Secured Creditor"), by and through its undersigned counsel, as and for its Motion for Relief from the Automatic Stay, and in support states as follows:

      1.     The Court has jurisdiction over this matter pursuant to 11 U.S.C. §362, Rule 4001(a) of the Federal Rules of Bankruptcy Procedure, and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

      2.     On January 28, 2013, Debtors filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code.

      3.     Secured Creditor holds a security interest in Debtors' real property located at 710 19th Street, Orlando, Florida 32805, by virtue of a Mortgage which is recorded in the Public

Records of Orange County, Florida in Book 9811 at Page 6409.  Said Mortgage secures a Note in the amount of $136,853.00. True and correct copies of the relevant loan documents are attached as Composite Exhibit "A."

4.    The aforementioned mortgage gives Secured Creditor a First mortgage position on the property legally described as:

**LOT 6, BLOCK 13, ANGEBILT ADDITION, ACCORDING TO PLAT THEREOF AS RECORDED IN PLAT BOOK H, PAGES 79 AND 80 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.**

5.    Upon information and belief, the property has not been claimed exempt by Debtors. Additionally, the property has not been abandoned by the Trustee.

6.    Debtors are indebted to Secured Creditor in the amount of $119,942.94, with interest accruing at the rate of $399.81 per mensem, plus other fees and costs advanced by the mortgagee pursuant to the loan documents. See Affidavit of Indebtedness attached as Exhibit "B."

7.    Payments pursuant to the Mortgage have been in default and remain in default since February 1, 2013.

8.    Furthermore, according to the Orange County Property Appraiser, the estimated value of the property is $56,805.00. See Orange County Property Appraisal attached as Exhibit "C." Thus, there is no equity in the property for the benefit of unsecured creditors of the estate.

9.    Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtors' failure to make regular payments under the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such security interest.

10.    Secured Creditor respectfully requests that the Court grant it relief from the automatic stay in this case pursuant to 11 U.S.C. §362(d)(1), for cause, namely the lack of adequate protection to Secured Creditor for its security interest in the subject property. The value of the collateral is insufficient in and of itself to provide adequate protection to Secured Creditor, which the Bankruptcy Code requires to be provided.

11.    Secured Creditor further requests that the Court Order entered pursuant to the instant Motion provide that all communications sent by Secured Creditor in connection with proceeding against the property including, but not limited to, notices required by state law and

communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, be sent directly to Debtors.

12.     Pursuant to 11 U.S.C. §362(e), Secured Creditor hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

13.     Secured Creditor has incurred attorneys' fees and costs as a result of the necessity of filing this Motion. Secured Creditor's attorneys' fees and costs are recoverable as part of the debt pursuant to the loan documents.

**WHEREFORE**, Secured Creditor respectfully requests that the automatic stay be lifted so that Secured Creditor may be permitted to protect its security interest in Debtors' property outside of the bankruptcy forum, that in the event that a hearing is necessary on this Motion that it be held within thirty (30) days, that Debtors be required to pay Secured Creditor's attorneys' fees and costs incurred in filing this Motion for Relief from the Automatic Stay, and for such further relief as the Court may deem just and proper.

Respectfully Submitted:


/s/ Alice Blanco
Alice Blanco
FBN: 450359
Aldridge | Connors LLP
Attorney for Secured Creditor
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7498
Fax: (888) 873-6147
Email: ablanco@aclawllp.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion for Relief from the Automatic Stay was served electronically or via U.S. Mail, first-class postage prepaid, to:

Timothy Gary
Towanda D Gary
710 19th Street
Orlando, FL 32805

U.S. Trustee
United States Trustee - ORL7/13
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

Marie E. Henkel
3560 South Magnolia Avenue
Orlando, FL 32806

Dated: May 23, 2013

<u>/s/ Alice Blanco</u>
Alice Blanco
FBN: 450359
Aldridge | Connors LLP
Attorney for Secured Creditor
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7498
Fax: (888) 873-6147
Email: ablanco@aclawllp.com

# NOTE

Exhibit "A"

GARY
Loan
MIN:
Case

DECEMBER 29, 2008                    WINTER GARDEN                    FLORIDA
[Date]                                    [City]                              [State]

710 19TH STREET, ORLANDO, FL 32805
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **FIDELITY FUNDING MORTGAGE CORP.** and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **ONE HUNDRED THIRTY SIX THOUSAND EIGHT HUNDRED FIFTY THREE** Dollars (U.S. **$136,853.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FIVE AND THREE-FOURTHS** percent (**5.750%**) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **FEBRUARY 1, 2009.** Any principal and interest remaining on the first day of **JANUARY, 2039**, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at **150 CRANES ROOST BLVD., S-2250, ALTAMONTE SPRINGS, FL 32701** or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$798.64**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge        ☐ Growing Equity Allonge        ☐ Other [Specify] _____

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.



ORIGINAL NOTE-1

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent (4.000%) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

## 10. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

ORIGINAL NOTE-1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ 12/29/08

- BORROWER - TOWANDA D GARY - DATE -

*[Sign Original Only]*

See Allonge Attached

ORIGINAL NOTE-1

# Allonge To Note

**Description**  710 19th Street
Orlando, FL    32805

Maker:    Towanda D Gary

Co-Maker(s):

Note Amount:    $136,853.00

Note Date:    12/29/2008

Payee:    Fidelity Funding Mortgage Corp.

Loan Number:    ███████

**Pay To The Order Of:**

**Flagstar Bank, F.S.B.**

**Without Recourse**

**Name:** _____

**Tamara Williams, Vice President**
**Texas Capital Bank, N.A.**
**Attorney-In-Fact For:**
**Fidelity Funding Mortgage Corp.**

ALLONGE-1

*Return To:*

**Southern Stewart Title**
**13207 W. Colonial Dr.**
**Winter Garden, FL. 34787**

After Recording Return To:
FIDELITY FUNDING MORTGAGE
CORP.
150 CRANES ROOST BLVD.,
SUITE 2250
ALTAMONTE SPRINGS, FL 32701

This document prepared by:
MELISSA WADE
FIDELITY FUNDING MORTGAGE
CORP.
150 CRANES ROOST BLVD.,
SUITE 2250
ALTAMONTE SPRINGS, FL 32701
(888) 774-4410

DOC # 20090011996   B: 9811 P: 6409
01/07/2009 11:39:52 AM   Page 1 of 9
Rec Fee: $78.00  Doc Type: M
Deed Doc Tax: $0.00
Intangible Tax: $273.71
Mortgage Stamp: $479.15
Martha O. Haynie, Comptroller
Orange County, FL
MB - Ret To: SOUTHERN STEWART TITLE

[Space Above This Line For Recording Data]

## MORTGAGE

GARY
Loan
MIN:
PIN:
Case

THIS MORTGAGE ("Security Instrument") is given on DECEMBER 29, 2008. The mortgagor is TOWANDA D GARY AND TIMOTHY GARY, WIFE AND HUSBAND ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, telephone (888)679-MERS. FIDELITY FUNDING MORTGAGE CORP. ("Lender") is organized and existing under the laws of FL, and has an address of 150 CRANES ROOST BLVD., SUITE 2250, ALTAMONTE SPRINGS, FL 32701. Borrower owes Lender the principal sum of ONE HUNDRED THIRTY SIX THOUSAND EIGHT HUNDRED FIFTY THREE Dollars (U.S. $136,853.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on JANUARY 1, 2039. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in ORANGE County, Florida:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
which has the address of 710 19TH STREET, ORLANDO, Florida 32805 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage,grant and convey the Property and that the Property is unencumbered, except for

370.2                    Page 1 of 8                    FHA Florida Mortgage

encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and

370.2                                Page 2 of 8                          FHA Florida Mortgage

contingencies, including fire for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either(a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provision of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to

Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** *Lender may collect fees and charges authorized by the Secretary.*

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    **(e) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note are not to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this

option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous

Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16 "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

Upon default as provided in Paragraph 9(a), and upon written demand by Lender to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure:** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordations costs.

**20. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and

recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

☐ Condominium Rider                    ☐ Growing Equity Rider          ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider       ☐ Graduated Payment Rider
☐ Other(s) [specify]

     BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Wanda D. Gary_     12/29/08
- BORROWER - TOWANDA D GARY - DATE -

_Timothy Gary_     12/29/08
TIMOTHY GARY - DATE -

Borrower's Mailing Address: 710 19TH STREET, ORLANDO, FL 32805

Signed, sealed, and delivered in the presence of:

MYRA J. JOHNSON         Kelley Timson

STATE OF Florida

COUNTY OF Orange

The foregoing instrument was acknowledged before me this 29 day of Dec. 2008 , by

Towanda D. Gary and Timothy Gary, wife and husband

Who is personally known to me or has produced _____ DL _____ as identification.



Notary Public

My Commission Expires:
Serial #:

File No.: ▓▓▓▓▓▓

# EXHIBIT A

LOT 6, BLOCK 13, ANGEBILT ADDITION, ACCORDING TO PLAT THEREOF AS RECORDED IN PLAT
BOOK H, PAGES 79 AND 80 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.

DOC # 20120406920 B: 10417 P: 6717
07/31/2012 13:29 PM   Page 1 of 7
Rec Fee: $61.00
Deed Doc Tax: $0.00
Mortgage Doc Tax: $0.00
Intangible Tax: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

When ██████████████ #
First American Title ████████████
Loss Mitigation Title Services 449.6
P.O. Box 27670
Santa Ana, CA 92799
RE: GARY - MOD REC SVC

**This Document Prepared By:**
**FLAGSTAR BANK, FSB**
**5151 CORPORATE DRIVE**
**TROY, MI 48098**
**LINDA BICKERS**

**Parcel ID Number:**

_____ [Space Above This Line For Recording Data] _____

Original Recording Date: **January 07, 2009**                                    Loan No:
Original Loan Amount: **$136,853.00**                                    FHA Case Number
New Money: **$0.00**                                                      MIN Number:

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this **1st** day of **April, 2012**, between **TOWANDA D. GARY AND TIMOTHY GARY, WIFE AND HUSBAND** whose address is **710 19TH ST, ORLANDO, FL 32805** ("Borrower") and **FLAGSTAR BANK, FSB** which is organized and existing under the laws of , and whose address is **5151 CORPORATE DRIVE, TROY, MI 48098** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **December 29, 2008** and recorded in **Book/Liber 9811**, Page **6409**, Instrument No: **20090011996**, of the **Official Records (Name of Records)** of ORANGE County, FL **(County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**710 19TH STREET, ORLANDO, FL 32805,**
(Property Address)
the real property described being set forth as follows:

**THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF ORANGE, STATE OF FLORIDA: LOT 6, BLOCK 13, ANGEBILT ADDITION, ACCORDING TO PLAT THEREOF AS RECORDED IN PLAT BOOK H, PAGES 79 AND 80 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **April 1, 2012**, the amount payable under the Note and the Security Instrument (the "Unpaid

Principal Balance") is U.S. **$121,540.16**, consisting of the amount(s) loaned to Borrower by Lender plus capitalized interest in the amount of **$2,395.64** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.000%**, from **April 1, 2012**. Borrower promises to make monthly payments of principal and interest of U.S. **$580.25**, beginning on the **1st** day of **May, 2012**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **April 1, 2042** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

HUD MODIFICATION AGREEMENT
8300 03/11                                                                                            *(page 2 of 6)*

6.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7.  Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8.  Pursuant to Section 199.145(4)(b), Florida Statutes, additional nonrecurring intangible tax is due. This Mortgage is given in connection with the refinancing of an obligation secured by an existing mortgage, recorded in Official Records Book 9811, Page 6409, Instrument No: 20090011996, Public Records of ORANGE County, Florida from the Mortgagor hereunder to the Mortgagee hereunder, or to the assignor of the Mortgagee hereunder.  As of the date of refinancing, the unpaid principal balance of the original obligation, plus accrued by unpaid interest, secured by the existing mortgage is equal to $143,739.33.  The principal balance of the new obligation secured by this Mortgage is $146,883.17, which amount represents, as of the refinancing, the excess of the unpaid principal balance of the original obligation, plus accrued by unpaid interest. Notwithstanding anything to the contrary contained in the foregoing, if the obligor under the new obligation is not liable to the obligee under the obligation secured by this Mortgage, then the additional nonrecurring intangible tax shall be computed on the entire principal balance of the new obligation.

_Twanda D. Gary_ _____ (Seal)
**TOWANDA D. GARY** -Borrower

_Timothy Gary_ _____ (Seal)
**TIMOTHY GARY** -Borrower

_Jeremy Davis_ / Jeremy Davis     -Witness     _Cynthia Soedeker_ Cynthia Soedeker -Witness
SIGN AND PRINT FULL NAME              SIGN AND PRINT FULL NAME

_____ [Space Below This Line For Acknowledgments] _____

State of Florida

County of _Orange_      ss.

The foregoing instrument was acknowledged before me this **22** day of **June**, 20 **12**,
by **TOWANDA D. GARY AND TIMOTHY GARY, WIFE AND HUSBAND** who is personally known to me or
who has produced _FL Drivers License_ as identification.



_Elizabeth S. Norquist_
(Signature of person taking acknowledgment)
_Elizabeth S. Norquist_
(Name typed printed or stamped)
_Notary_
(Title or Rank)

_____
(Serial Number if any)
My Commission expires : _8/14/2015_

```
ELIZABETH S. NORQUIST
Notary Public - State of Florida
My Comm. Expires Aug 14, 2015
Commission # EE 121468
```

HUD MODIFICATION AGREEMENT
8300 03/11

*(page 4 of 6)*

**FLAGSTAR BANK, FSB**

By: ~~Heath Felt~~  7/13/12                                                          (Seal)
                                                                                    Lender
Name: ~~SHARON G MORGAN~~  ~~LINDA L DUNCAN~~ Heather Fettner
Title: **VICE PRESIDENT**
~~Assistant~~

_____ [Space Below This Line For Acknowledgments] _____

Acknowledged before me in **OAKLAND** County, **MICHIGAN**, On  7-13-2012
by ~~SHARON G MORGAN~~, the **VICE PRESIDENT** of **FLAGSTAR BANK, FSB**.
~~LINDA L DUNCAN~~ Assistant
Heather Fettner

Notary Name _____

County _____
```
        ┌─────────────────────────────────────────┐
        │         JASON T. KOPP                     │
        │   Notary Public, State of Michigan        │
        │         County of Macomb                  │
        │  My Commission Expires March 20, 2018     │
        │    Acting in the County of Oakland        │
        └─────────────────────────────────────────┘
```
Acting in County _____

My commission expires : _____

_____    7-13-12
Mortgage Electronic Registration Systems, Inc - Nominee for Lender
SHARON G MORGAN
Title:  VICE PRESIDENT

_____    [Space Below This Line For Acknowledgments] _____

Acknowledged before me in **OAKLAND** County, **MICHIGAN**, On ___7-13-2012___ by **SHARON G MORGAN**, the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC**.

_____
Notary Name

_____
County

_____
Acting in County

My commission expires : _____

```
JASON T. KOPP
Notary Public, State of Michigan
County of Macomb
My Commission Expires March 20, 2018
Acting in the County of Oakland
```

HUD MODIFICATION AGREEMENT
8300 03/11

*(page 6 of 6)*

# CERTIFICATE OF PREPARATION

This is to certify that this instrument was prepared by Flagstar Bank, FSB, one of the parties named in the instrument.

Name: _IRENE PERRY_

Title: _DOC PREP_

GARY

FL

FIRST AMERICAN ELS
MODIFICATION AGREEMENT

WHEN RECORDED, RETURN TO:
FIRST AMERICAN MORTGAGE SERVICES
1100 SUPERIOR AVENUE, SUITE 200
CLEVELAND, OHIO 44114
NATIONAL RECORDING

8645 11/11

**Return to:**
Aldridge Connors LLP
15 Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305

Reference No.: ████
Borrower: Towanda D. Gary and Timothy Gary
MERS MIN No. ████
MERS Phone No. 1888-679-6377

NOTE TO CLERK:  Please cross-reference to Deed Book 9811, Page 6409, Orange County, Florida Records.

<u>ASSIGNMENT</u>

STATE OF  **Michigan**

COUNTY OF  **Oakland**

For value received, Mortgage Electronic Registration Systems, Inc., as nominee for Fidelity Funding Mortgage Corp., its successors and assigns  ("Assignor") has this day transferred, sold, assigned, conveyed and set over to Flagstar Bank, FSB, its successors, representatives and assigns, whose address is 5151 Corporate Drive, Troy, Michigan 48098, as Assignee, all its right, title and interest in and to a certain Security Deed  executed  by Towanda D. Gary and Timothy Gary, wife and husband  to Mortgage Electronic Registration Systems, Inc., as nominee for Fidelity Funding Mortgage Corp., its successors and assigns, dated December 29, 2008, recorded in Deed Book 9811, Page 6409, Orange County, Florida Records.

Property Address: 710 19th Street, Orlando, FL 32805

The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and assigns, the aforesaid Security Deed, with all interest secured thereby, all liens and any rights due or to become due thereon, along with all rights in the property described therein, together with all the powers, options, privileges and immunities therein contained.

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and seal this ___28th___ day of ___March___, 2013.

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public
My Commission Expires:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIDELITY FUNDING MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS

By: _____  **Lindsay Vuljevic**

Title: _____  **Vice President**

By: _____  **KEVIN PAPERD**

Title: _____  **Vice President**

(Corporate Seal)

Monica Hoekwater
NOTARY PUBLIC, State of Michigan
County of Midland
My commission Expires January 27, 2019
Acting in the County of Oakland, MI

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:                                              Case No. 13-00938-CCJ
                                                    Chapter 7

TIMOTHY GARY
TOWANDA D GARY

            Debtors.
_____/

**AFFIDAVIT IN SUPPORT OF**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**

STATE OF Michigan
COUNTY OF Oakland                                   | Exhibit "B" |

    **BEFORE ME,** a notary public duly authorized to take acknowledgements and administer oaths, on this day personally appeared _Sondra Karien_ after having been duly cautioned and sworn under oath, deposes and states as follows:

    1.    I am making this Affidavit in connection with and in support of the Motion for Relief from Stay filed by Flagstar Bank, FSB, a secured creditor in the above-styled bankruptcy proceeding.

    2.    Flagstar Bank, FSB ("Secured Creditor") is the holder of the subject Note and Mortgage.

    3.    I am a _Bankruptcy Analyst_ (Job Title) for Secured Creditor. In said capacity, I have access to Secured Creditor's computerized account records and have personal knowledge of the facts stated herein. I make this affidavit on personal knowledge, based on my review of the records of Flagstar Bank, FSB, as they relate to the loan in this matter. The business records reviewed were made at or near the time of the transactions described in them, by or from information transmitted by a person with knowledge of the transactions. These records are kept in the course of Flagstar Bank, FSB's regularly conducted business activities, and it is Flagstar Bank's regular practice to make and keep such records.

    4.    I have authority to make this affidavit. Further, I have personally reviewed Secured Creditor's records and make this Affidavit based upon personal knowledge obtained therein.

    5.    I am familiar with the loan made on December 29, 2008 by Fidelity Funding Mortgage Corporation to Timothy Gary ("Borrower") and Towanda D. Gary ("Co-Borrower") in the principal amount of $136,853.00 ("the Loan"), which is the basis for Secured Creditor's secured status. The property located at **710 19th Street, Orlando, Florida 32805** has been secured by the Note and Mortgage. A true and correct copy of the Note and Mortgage as attached to the Motion for Relief are herewith adopted by reference and made part thereof.

Affidavit of Indebtedness
Case No. 13-00938-CCJ

     6.     Secured Creditor maintains a computerized account of the Loan including all receipts and disbursements, charges, and credits.

     7.     The amount of indebtedness and the nature and extent of default set forth in the Motion for Relief is derived from the computerized account of the Loan.

     8.     In connection with this case, I have reviewed the computerized account records, loan documents, and other business records of Secured Creditor.

     9.     The note and mortgage payments are in default as Debtors, Timothy Gary and Towanda D. Gary, are contractually due for the February 1, 2013, payment, and have failed to timely meet and satisfy the payment requirements with respect to the obligations set forth in the note.

     10.     Flagstar Bank, FSB has declared the full amount payable under the note and mortgage to be due.

     11.     On examination of these business records, it is determined that there is now due and owing to the Secured Creditor upon the note and mortgage an outstanding principal balance of $119,942.94, plus advances made, attorneys' fees and costs, and interest accruing thereon in accordance with the loan documents.

     12.     This Affidavit is signed under penalty of perjury as being true and correct based on my personal knowledge of Secured Creditor's books and business records, and is intended to show that there is available competent testimony which can be introduced at evidentiary hearing if necessary.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
AFFIANT

STATE OF: Michigan
COUNTY OF: Oakland

The foregoing instrument was sworn before me this 10th day of May, 2013 by _____, who is personally known to me and who did take an oath.

_____
NOTARY PUBLIC

My Commission Expires:

Monica Hoekwater
NOTARY PUBLIC, State of Michigan
County of Midland
My commission Expires January 27, 2019
Acting in the County of Oakland, MI

# Parcel Information - 03-23-29-0180-13-060

Orange County Property Appraiser  •
http://www.ocpafl.org

## Property Summary

Exhibit "C"

**Property Name**
710 19Th St
  **Names**
Gary Towanda D
  **Municipality**
ORG - Un-Incorporated
  **Property Use**
0101 - Single Family

**Mailing Address**
710 19Th St
Orlando, FL 32805-4627
  **Physical Address**
710 19Th St
Orlando, FL 32805



**QR Code For Mobile Phone**



292303018013060  09/28/2009



292303018013060  09/28/2009



## Value and Taxes

## Historical Value and Tax Benefits

| Tax Year Values | | Land | Building(s) | Feature(s) | Market Value | Assessed Value |
|---|---|---|---|---|---|---|
| 2013 | [W] [MKT] | $2,325 + | $50,295 + | $0 = | $52,620 (-7.4%) | $52,620 (-7.4%) |
| 2012 | [✓] [MKT] | $2,325 + | $54,480 + | $0 | $56,805 (-2.7%) | $56,805 (-2.7%) |
| 2011 | [✓] [MKT] | $2,325 + | $56,036 + | $0 = | $56,805 (-2.7%) | $56,805 (-2.7%) |
| 2010 | [✓] [MKT] | $2,372 + | $70,687 + | $0 = | $58,361 (-20%) | $58,361 (-20%) |
| 2009 | [✓] [MKT] | $10,296 + | $128,709 + | $0 = | $73,059 (-47%) | $73,059 (-47%) |
| | | | | = | $139,005 | $139,005 |

| Tax Year Benefits | | Original Homestead | Additional Hx | Other Exemptions | SOH Cap | Tax Savings |
|---|---|---|---|---|---|---|
| 2013 | [W] [$] [HX] | $25,000 | $2,620 | $0 | $0 | $466 |
| 2012 | [✓] [$] [HX] | $25,000 | $6,805 | $0 | $0 | $504 |
| 2011 | [✓] [$] [HX] | $25,000 | $8,361 | $0 | $0 | $520 |
| 2010 | [✓] [$] [HX] | $25,000 | $23,059 | $0 | $0 | $643 |
| 2009 | [✓] [$] [HX] | $25,000 | $25,000 | $0 | $0 | $655 |

## 2013 Taxable Value and Estimate of Proposed Taxes

| Taxing Authority | Assd Value | Exemption | Tax Value | Millage Rate | Taxes | % |
|---|---|---|---|---|---|---|
| Public Schools: By State Law (Rle) | $52,620 | $25,000 | $27,620 | 5.2300 (0.00%) | $144.45 | 31 % |
| Public Schools: By Local Board | $52,620 | $25,000 | $27,620 | 3.2480 (0.00%) | $89.71 | 19 % |
| Orange County (General) | $52,620 | $27,620 | $25,000 | 4.4347 (0.00%) | $110.87 | 24 % |
| Unincorporated County Fire | $52,620 | $27,620 | $25,000 | 2.2437 (0.00%) | $56.09 | 12 % |
| Unincorporated Taxing District | $52,620 | $27,620 | $25,000 | 1.8043 (0.00%) | $45.11 | 10 % |
| Library - Operating Budget | $52,620 | $27,620 | $25,000 | 0.3748 (0.00%) | $9.37 | 2 % |
| St Johns Water Management District | $52,620 | $27,620 | $25,000 | 0.3313 (0.00%) | $8.28 | 2 % |
| | | | | 17.6668 | $463.88 | |

## 2013 Non-Ad Valorem Assessments

| Levying Authority | Assessment Description | Units | Rate | Assessment |
|---|---|---|---|---|
| COUNTY SPECIAL ASSESSMENT | REPUBLIC - GARBAGE - (407)836-6601 | 1.00 | $235.00 | $235.00 |
| | | | | $235.00 |

# Property Features

## Property Description

ANGEBILT ADDITION H/79 LOT 6 BLK 13

## Total Land Area

| 6,741 sqft (+/-) | | 0.15 acres (+/-) | GIS Calculated |
|---|---|---|---|

## Land

| Land Use Code | Zoning | Land Units | Unit Price | Land Value | Class Unit Price | Class Value |
|---|---|---|---|---|---|---|
| 0100 - Single Family | R-2 | 1 LOT(S) | $2,325.02 | $2,325 | $0.00 | $2,325 |

## Buildings

| Model Code | 01 - Single Fam Residence | Subarea Description | Sqft | Value |
|---|---|---|---|---|
| Type Code | 0101 - Single Family | BAS - Base Area | 1395 | $47,765 |
| Building Value | $50,295 | FGR - Fin Garage | 342 | $5,855 |
| Estimated New Cost | $53,791 | FOP - F/Opn Prch | 20 | $171 |
| Actual Year Built | 2008 | | | |
| Beds | 4 | | | |
| Baths | 2.0 | | | |
| Floors | 1 | | | |
| Gross Area | 1757 sqft | | | |
| Living Area | 1395 sqft | | | |
| Exterior Wall | Cb.Stucco | | | |
| Interior Wall | Drywall | | | |

## Extra Features

| Description | Date Built | Units | Unit Price | XFOB Value |
|---|---|---|---|---|
| There are no extra features associated with this parcel | | | | |

# Sales

## Sales History

| Sale Date | Sale Amount | Instrument # | Book/Page | Deed Code | Seller(s) | Buyer(s) | Vac/Imp |
|---|---|---|---|---|---|---|---|
| 12/29/2008 | $154,900 | 200900011995 | 09811 / 6408 | Warranty Deed | Bob Harrell Properties Inc | Gary Towanda D | Improved |
| 09/02/2004 | $20,000 | 20040615223 | 07632 / 3741 | Warranty Deed | Equity Trust Co (Custodian) | Bob Harrell Properties Inc | Vacant |

## Similar Sales

| Address | Sale Date | Sale Amount | $/SQFT | Deed Code | Beds/Baths | Instrument # | Book/Page |
|---|---|---|---|---|---|---|---|
| 3974 S Orange Blossom Trl | 04/15/2013 | $2,200,000 | $740 | Special Warranty | 0/0 | 20130210012 | 10556 / 1767 |
| 1412 39Th St | 04/08/2013 | $97,100 | $72 | Certificate of Title | 3/2 | 20130195956 | 10552 / 4110 |
| 1424 38Th St | 03/28/2013 | $15,000 | $16 | Special Warranty | 2/1 | 20130172575 | 10545 / 7164 |
| 1432 38Th St | 03/27/2013 | $30,000 | $22 | Warranty Deed | 2/1 | 20130182162 | 10548 / 4302 |
| 920 W Kaley Ave | 03/27/2013 | $25,000 | $23 | Special Warranty | 2/1 | 20130174294 | 10546 / 2336 |
| 500 29Th St | 03/21/2013 | $99,000 | $59 | Quitclaim Deed | 2/2 | 20130169132 | 10544 / 6301 |
| 1033 18Th St | 03/18/2013 | $14,000 | $21 | Special Warranty | 1/1 | 20130159241 | 10541 / 8423 |
| 837 23Rd St | 03/15/2013 | $18,200 | $19 | Special Warranty | 1/1 | 20130159502 | 10541 / 9471 |
| 2904 S Orange Blossom Trl | 03/14/2013 | $242,000 | $28 | Warranty Deed | 3/1 | 20130167087 | 10544 / 1588 |
| 909 26Th St | 03/07/2013 | $40,000 | $27 | Warranty Deed | 5/3 | 20130138436 | 10536 / 1187 |

# Services for Location

## TPP Accounts At Location

| Account | Market Value | Taxable Value | Business Name(s) | Business Address |
|---|---|---|---|---|

There are no TPP Accounts associated with this parcel.

## Schools

Jones (High School)

| | |
|---|---|
| **Principal** | Mrs. Valeria M Maxwell |
| **Office Phone** | 407-835-2300 |
| **Grades** | 2011: C  \|  2010: B  \|  2009: D |

Memorial (Middle School)

| | |
|---|---|
| **Principal** | Dr. Shelia Windom |
| **Office Phone** | 407-245-1810 |
| **Grades** | 2012: C  \|  2011: C  \|  2010: C |

Grand Ave (Elementary)

## Homeowner's Association

| | |
|---|---|
| **Name** | Holden Heights Neighborhood Association |
| **Gated?** | No |
| **Mandatory?** | No |
| **Number Of Households** | 1935 |

## Utilities/Services

| | |
|---|---|
| **Electric** | Orlando Utilities Commission |
| **Water** | Orlando Utilities Commission |

## Elected Officials

| | |
|---|---|
| State Senate | Geraldine F. Thompson |
| State Representative | Bruce Antone |
| School Board Representative | Kathleen Kat Gordon |
| US Representative | Corrine Brown |
| County Commissioner | Tiffany Moore Russell |